


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANIEL FOX,

                Plaintiff,

    -against-

TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY, OFFICER RANDOLPH
SANDERS, SERGEANT LAURA TULLY, and
OFFICER KEISHA JOHNSON,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-4143 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is an action brought under 42 U.S.C. § 1983 by Plaintiff Daniel Fox against Defendants Triborough Bridge and Tunnel Authority (the "TBTA") and Officer Randolph Sanders, Sergeant Laura Tully, and Officer Keisha Johnson (collectively, the "Individual Defendants"). (See Am. Compl. (Dkt. 17).) Trial is scheduled to begin in this case on November 12, 2019. Pending before the court are the parties' motions in limine. (See Defs. Mot. (Dkt. 72); Pl. Mot. (Dkt. 73).)

For the reasons set forth below, Defendants' motion in limine is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion in limine is GRANTED.

I.     **BACKGROUND**

In this action, Plaintiff charges Defendants with numerous violations of his constitutional rights pursuant to § 1983. (See Am. Compl.) In brief, he alleges that, on or about June 28, 2017, Sanders, a bridge and tunnel officer employed by the TBTA, "violently" threw Plaintiff off his bicycle as he was riding over the Marine Parkway Bridge-Gil Hodges Bridge (the "Bridge") from Brooklyn to Queens, and then "berated and cursed at" him while he "lay on the ground

1

writhing in pain." (Id. ¶ 8.) Plaintiff further alleges that Johnson and Tully arrived shortly thereafter and that all three defendants refused to summon an ambulance or release Plaintiff until his parents arrived. (Id.) Plaintiff's parents picked him up and took him to the hospital, where he was diagnosed with extensive injuries. (Id. ¶ 9.) Plaintiff was not charged with any offense. (Id.)

Defendants' characterization of the facts is markedly different. Defendants claim that Plaintiff was unlawfully riding his bicycle on the pedestrian walkway of the Bridge, despite conspicuous signs prohibiting him from doing so. (Defs. Mot. at 3.) Sanders requested that he dismount and walk his bicycle. (Id.) In response, Defendants allege that Plaintiff cursed at Sanders, put up his middle finger, called him a "pig," and continued to bike across the bridge. (Id.) Sanders subsequently stood in Plaintiff's path and directed him to stop, but Plaintiff attempted to bike past Sanders and fell when their shoulders clipped. (Id. at 4.)

Plaintiff filed his complaint in this court on July 12, 2017. (Compl. (Dkt. 1).) Defendants answered the complaint on September 8, 2017 (Answer to Compl. (Dkt. 10)), and filed an amended answer on September 25, 2017 (Am. Answer to Compl. (Dkt. 12)). Plaintiff then filed an amended complaint on October 29, 2017 (Am. Compl.), which Defendants answered on November 16, 2017 (Answer to Am. Compl. (Dkt. 19)). Discovery proceeded in front of Magistrate Judge James Orenstein and concluded on September 25, 2018. (See Sept. 25, 2018 Min. Entry (Dkt. 61).) Trial is scheduled to begin on November 12, 2019. (See Sept. 20, 2019 Order.)

On October 9, 2019, Defendants filed a motion in limine seeking preclusion of several categories of evidence at trial. (See Defs. Mot.) Plaintiff also filed a motion in limine seeking preclusion of additional evidence at trial (see Pl. Mot), and both motions were fully briefed on

2

October 23, 2019 (see Defs. Mem. in Opp'n to Pl. Mot. ("Defs. Opp'n") (Dkt. 74); Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Opp'n") (Dkt. 79); Pl. Reply in Further Supp. of Mot. ("Pl. Reply") (Dkt. 80); Defs. Reply in Further Supp. of Mot. ("Defs. Reply") (Dkt. 86).)

## II. LEGAL STANDARD

### A. Motions in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, "courts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). The court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41.

### B. General Rules of Admissibility

Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. This relevance standard is "very low." United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence

is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; see also White, 692 F.3d at 246.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief v. United States, 519 U.S. 172, 184 (1997). In short, Rule 403 requires the court to "make a conscientious assessment of whether unfair prejudice substantially outweighs probative value" with regard to each piece of proffered evidence. Al-Moayad, 545 F.3d at 160 (quoting United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam)).

## III. DISCUSSION

The court addresses each of the parties' requests for admission or exclusion in turn.

### A. Plaintiff's Monell Claim

First, Defendants argue that Plaintiff should be precluded from offering any evidence relating to his Monell claim because, they argue, this claim fails as a matter of law. (Defs. Mot. at 4-8.) As a preliminary matter, this argument is ill-suited for resolution on a motion in limine, which is designed to allow for rulings on evidentiary questions. See Gorbea, 2014 WL 2916964, at *1 (citing Luce, 469 U.S. at 40 n.2). Such an argument about the legal sufficiency of one of Plaintiff's claims should have been raised on a motion for summary judgment.

Regardless, Plaintiff has proffered sufficient evidence such that a jury could rule in his favor on his Monell claim. A municipality may be liable under 42 U.S.C. § 1983 for

constitutional violations of its employees when such violations result from the municipality's official policy. Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 692-94 (1978). Such a policy may be (1) an express policy; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'"; or (3) a decision by a person with "final policymaking authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 127 (1988) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 168 (1970); citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion)).

Here, Plaintiff argues that the TBTA is liable because it failed to adequately train its employees. (Pl. Opp'n at 5-10.) A failure to monitor, supervise, or discipline employees can give rise to municipal liability. See Vann v. City of New York, 72 F.3d 1040, 1049-50 (2d Cir. 1995). In such a case, "[a] § 1983 plaintiff . . . may establish the pertinent custom or policy by showing that the municipality, alerted to the possible [constitutional violation], exhibited deliberate indifference." Id. at 1049. "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Id. A plaintiff may demonstrate such an obvious need "through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id.

A plaintiff must show:

1) That the "policymaker knows to a moral certainty that her employees will confront a given situation";

2) That "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and

5

> 3) That "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."

Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (citations and quotation marks omitted); see also Canete v. Metro. Transp. Auth., No. 17-CV-3961 (PAE), 2018 WL 4538897, at *4 (S.D.N.Y. Sept. 20, 2018).

As Defendants note, "a pattern of similar constitutional violations by untrained employees is <u>ordinarily</u> necessary" for a failure to train claim to succeed. Connick v. Thompson, 563 U.S. 51, 61 (2011) (citations and quotation marks omitted) (emphasis added). However, ordinarily does not mean always. Plaintiff here plans to submit evidence that the TBTA assigned officers—in particular, Sanders—to monitor for and issue summonses to bicyclists impermissibly biking across the bridge (Pl. Opp'n at 6-7) and that no training was provided to the officers regarding how or when to stop bicyclists who ignore their commands (<u>id.</u> at 8-9). Given those facts, a jury could determine that the need for training to prevent constitutional deprivations of the sort alleged here was "obvious," see Vann, 72 F.3d at 1049, and so find the TBTA liable.

As Defendants have not provided any other rationale for excluding any of Plaintiff's evidence regarding his <u>Monell</u> claim, their motion <u>in limine</u> as to this evidence is DENIED.

### B. Johnson and Tully's Alleged Failure to Intervene

Under a similar theory, Defendants next ask this court to exclude evidence regarding Johnson and Tully's alleged failure to intervene because Plaintiff has failed to state a claim against them. (Defs. Mot. at 8-9.) Once again, this is a dispositive motion disguised as a motion <u>in limine</u>. Defendants offer no evidentiary basis for their request; indeed, Defendants do not cite a single rule of evidence in their discussion of the issue. (See <u>id.</u>; Defs. Reply at 5.) Regardless, their argument fails. Plaintiff plans to testify, <u>inter alia</u>, that he told Johnson and Tully that he

was "badly hurt" and that he "needed medical attention" but that they nonetheless refused to call him an ambulance. (Pl. Opp'n at 13 (citations omitted).) He will also testify that Johnson pushed him twice in Tully's presence. (Id. at 14.) This evidence is directly relevant to Johnson and Tully's alleged failure to intervene, and Defendants have not provided any basis for its exclusion. Defendants' motion is therefore DENIED, and Plaintiff will be permitted to introduce his evidence regarding Johnson and Tully's alleged failure to intervene. See Fed. R. Evid. 402; see also White, 692 F.3d at 246.

### C. Potential Alternative Courses of Action

Next, Defendants request that the court preclude Plaintiff from arguing or submitting evidence that Sanders should have responded in a different manner or that he should have used lesser or different force. (Defs. Mem. at 9-10.) Defendants argue that such evidence is irrelevant because "[t]he claims against [Sanders] for trial focus solely on the reasonableness of the actions he took." (Id. at 10.) However, the relevance standard is "very low," White, 692 F.3d at 246 (citations omitted), and evidence regarding other potential courses of action may help the jury determine whether Sanders acted reasonably. This aspect of Defendants' motion is therefore DENIED.

### D. Indemnification

Defendant also seeks to preclude Plaintiff from referring to defense counsel as TBTA attorneys and from mentioning any potential indemnification of the individual Defendants by the TBTA or the City of New York. (Defs. Mot. at 10-12.)

The court agrees that evidence regarding indemnification would be prejudicial against the Individual Defendants, as such evidence might "encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." Williams

v. McCarthy, No. 05-CV-10230 (SAS), 2007 WL 3125314, at *7 n.46 (S.D.N.Y. Oct. 25, 2007) (quoting Lawson v. Trowbridge, 153 F.3d 368, 379 (7th Cir. 1998)). See also Nunez v. Diedrick, No. 14-CV-4182 (RJS), 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) ("[A]ny references to the City's potential indemnification obligations run the significant risk of unfairly prejudicing Defendant."); Hernandez v. Kelly, No. 09-CV-1576 (TLM), 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011) (finding that evidence regarding the City's potential indemnification of defendant police officers would be prejudicial against the defendants). Moreover, Plaintiff "does not intend to introduce any evidence or comment on the issue of indemnification by any party" and "has no intention of mentioning the City of New York." (Pl. Opp'n at 12.) Defendants' motion is therefore GRANTED and Plaintiff if prohibited from mentioning or introducing evidence regarding any potential indemnification of the Individual Defendants.

The court will not, however, preclude Plaintiff from referring to defense counsel as TBTA attorneys. As Plaintiff notes, the TBTA is a defendant in this case, and the jury will be aware that the defense attorneys represent all Defendants, including the TBTA. (Id. at 12-13.) Defendants' motion is therefore DENIED in this respect.

### E. Plaintiff's Criminal History

Finally, Plaintiff seeks to preclude Defendants' from cross-examining Plaintiff regarding the following: (1) a 2016 guilty plea; (2) a 2002 arrest; and (3) a 2016 arrest in which Plaintiff was charged with reckless driving, reckless endangerment in the first and second degrees, speeding, and unlawful fleeing from a police officer in a motor vehicle in the third degree. (Pl. Mot. at 3-7.) Defendants respond that they do not intend to introduce evidence regarding the 2016 guilty plea or the 2002 arrest. (Defs. Opp'n at 2.)

However, Defendants argue they should be permitted to cross-examine Plaintiff regarding his 2016 arrest. (Id. at 2.) In general, evidence of prior bad acts may be introduced at trial to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but may not be introduced "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Defendants argue the fact of his prior arrest is relevant to motive because Plaintiff's criminal case remained ongoing at the time of his encounter with the Individual Defendants. (Defs. Opp'n at 3.) In fact, the case against Plaintiff was adjourned in contemplation of dismissal on August 6, 2017, about a month after the incident underlying the instant action. (Pl. Reply at 3.) Defendants argue that Plaintiff may have had a motive to avoid Sanders when he was directed to stop because he would have wanted to avoid jeopardizing the favorable resolution of the pending charge against him. (Defs. Opp'n at 3.) This motive, in turn, is relevant to whether Plaintiff did, in fact, ignore Sanders's instructions and/or evade him. (Id.)

Plaintiff replies that even if this evidence is relevant as to motive, it should not be admitted because its probative value does not outweigh its potential for unfair prejudice. (Pl. Reply at 2-3.) Even when relevant, "evidence admitted under Rule 404(b) must not have its probative value substantially outweighed by its prejudicial effect." United States v. Scott, 677 F.3d 72, 83 (2d Cir. 2012) (citing Huddleston v. United States, 485 U.S. 681, 691 (1988)). This is "essentially an importation of Rule 403's balancing test." Id. And, as Plaintiff suggests, the potential for prejudice here is substantial. Both the 2016 arrest and the incident underlying the present litigation allegedly involve reckless endangerment and fleeing from the police, and so evidence regarding the 2016 arrest would be likely to lead the jury to the impermissible inference that Plaintiff is, as a matter of his character, likely to behave in a reckless manner and to evade

the police. The probative value of the evidence, on the other hand, is limited. To make their point about Plaintiff's motive, Defendants would also have to examine Plaintiff about the proceedings in that case, including his knowledge regarding the potential for adjournment in contemplation of dismissal at the time of the incident underlying this case. Such questioning would only delay trial and confuse the jury. The potential prejudice to Plaintiff substantially outweighs this attenuated chain of potential probative value.

In the alternative, Defendants appear to suggest that evidence regarding Plaintiff's 2016 arrest may be admissible under Rule 608(b). (Defs. Opp'n at 4.) Rule 608(b) permits evidence of prior bad acts only if "probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." Defendants have not, however, explained how the 2016 arrest is probative of the character for truthfulness of either Plaintiff or any other witness, and, to the court's knowledge, the charges did not involve any allegations of untruthfulness.

Accordingly, Plaintiff's motion in limine is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Defendants motion in limine is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion in limine is GRANTED. Plaintiff may not offer evidence regarding potential indemnification of the Individual Officers, and Defendants may not offer evidence nor cross-examine Plaintiff regarding any former arrests or charges.

SO ORDERED.

Dated: Brooklyn, New York
November 6, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge