UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DANIEL FOX,

                                                                 17-CV-4143 (NGG)(JO)

                         Plaintiff,

          -against-

                                                **NOTICE OF MOTION
FOR ATTORNEYS'
FEES AND COSTS**

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,
and Officer RANDOLPH SANDERS,

                                    Defendants.
-----------------------------------------------------------------------X

      **PLEASE TAKE NOTICE** that, upon the annexed Memorandum of Law, dated June 11,

2020, and accompanying declarations of Guy S. Regev, dated June 11, 2020,  the exhibits

annexed thereto, and upon all the prior pleadings and proceedings herein, plaintiff moves this

Court, before the Honorable Nicholas G. Garaufis at the Courthouse located at 225 Cadman

Plaza East, Brooklyn, New York, at a date and time to be selected by the Court, for an order

awarding attorneys' fees and other discretionary costs to Plaintiff in the total amount of

$300,750.00 pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 42 U.S.C.

§1988, as follows:

      a.   Attorneys' fees for Guy S. Regev, Gary A. Zucker, and Daniel B. Rubin in the

           amount of $300,750.00;

      b.   Reasonable costs and expenses in the amount of $32,591.61; and

      c.   Such other and further relief as this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Civil Rule 6.1(b) of

the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts

of New York, opposition papers are to be served by June 25, 2020.


Dated:          Brooklyn, New York
                June 11, 2020


                                        **ZUCKER & REGEV, P.C.**
                                        *Attorneys for Plaintiff*
                                        186 Joralemon Street
                                        Suite 1010
                                        Brooklyn, New York
                                        Telephone: 718-624-1211
                                        Facsimile: 718-624-6037


                                        By: _____/s/ Guy S Regev ( 6773)_____
                                                Guy S. Regev


TO:     Paul Krez, Esq. (by mail and email)

        KREZ & FLORES, LLP
        Attorneys for Defendants
        225 Broadway
        Suite 2800
        New York, NY 10007-3001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DANIEL FOX,

                                             17-CV-4143 (NGG)(JO)

                     Plaintiff,

      -against-

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,
and Officer RANDOLPH SANDERS,

                    Defendants.
-----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ATTORNEYS' FEES AND COSTS

**ZUCKER & REGEV, P.C.**
*Attorneys for Plaintiff*
186 Joralemon Street
Suite 1010
Brooklyn, New York
Telephone: 718-624-1211
Facsimile: 718-624-6037

**TABLE OF CONTENTS**

INTRODUCTION ……………………………………………………………………1

FACTS ……………………………………………………………………………...2

ARGUMENT …………………………………………………………………………2

    I.   PLAINTIFF IS THE PREVAILING PARTY AND IS ENTITLED TO A COMPLETE AWARD OF HIS ATTORNEYS' FEES AND COSTS ………………………………2

          a.   Legal Standard for Awarding Fees ……………………………………………2

          b.   Plaintiff's Counsel's Rates Correspond to the Prevailing Market ……………..5

    II.  THE HOURS EXPENDED LITIGATING MR. FOX'S CASE ARE REASONABLE ……………………………………………………………………………………....13

    III. APPLYING THE JOHNSON FACTORS, THE FEES REQUESTED ARE REASONABLE ……………………………………………………………………....16

    IV. PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF HIS COSTS …………….19

CONCLUSION …………………………………………………………………..20

# **TABLE OF AUTHORITIES**

**Cases**

Supreme Court
*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415 (1975)…………………………………………2
*Blum* v. *Stenson,* 465 U.S. 886, 896 n.ll (1984)……………………………………………3, 12
*City of Burlington v. Dague,* 505 U.S. 557 (1992)…………………………………………………17
*Farrar v. Hobby*, 506 U.S. 103, 114 (1992)…………………………………………………………4
*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011)…………………………………………………………...5
*Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) …………………………………........2, 12, 15
*Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010) ……………………...3, 12, 15

Circuit Court
*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of*
    *Elections*, 522 F.3d 182, 190 (2d Cir. 2008)………………………………………………16
*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)………………........4
*Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-
    90 (2d Cir. 2011)…………………………………………………………………………………3
*Dailey v. Societe Generale,* 108 F.3d 451, 461 (2d Cir.1997)……………………………………4
*Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)……………………5
*Gagne v. Maher*, 594 F.2d 336, 343–44 (2d Cir.1979), aff'd, 448 U.S. 122, 100 S.Ct. 2570, 65
    L.Ed.2d 653 (1980)……………………………………………………………………...1, 4, 5
*Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ……………………………………………...12
*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)…………………………15
*Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)…………………………………3
*New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).13, 15
*Polk v. New York State Dept. of Correctional Services*, 722 F.2d 23 (2d Cir.1983)…………..4, 7
*Quaratino v. Tiffany & Co.,* 166 F.3d 422, 424–428 (2d Cir. 1999) ……………………………1, 4
*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183–84 (2d Cir.1996)…………………………….1
*Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 243 (2d Cir. 2006) ………………3, 5
*Roberson v. Giuliani*, 346 F.3d 75, 78 (2d Cir. 2003)………………………………………………2
*Scott v. City of New York*, 643 F.3d 56, 59–60 (2d Cir. 2011) …………………………………8
*Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 71 F.3d 1053, 1059–
    60 (2d Cir.1995)………………………………………………………………………………...1
*Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999)…………………………………………1, 4

District Court
*Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010)
    …………………………………………………………………………………………………...8
*Andrews v. Koch,* 554 F. Supp. 1099, 1101 (E.D.N.Y. 1983)……………………………………6
*Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079 (S.D.N.Y. Mar. 10, 2016)……….7
*DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378(RJS), 2011 WL 4549412 (S.D.N.Y.
    Sept. 27, 2011)…………………………………………………………………………………8

*Green* v. *City of New York,* 05 CV 429 (DLI) (ETB), 2009 WL 3088419, *11 (E.D.N.Y. Feb. 13, 2009), *report and recommendation adopted in part,* 05 CV 429 (SLT) (ETB), 2009 WL 3063059 (E.D.N.Y. Sept. 21, 2009)………………………………………………………...18

*Harrington Haley LLP v. Nutmeg Ins. Co.*, 39 F. Supp. 2d 403, 411 (S.D.N.Y. 1999)…………14

*Himmel v. Country in New York, LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011)…………………………………………………………………………5

*Hnot v. Willis Group Holdings Ltd.*, 01 Civ. 6558 (GEL), 2008 WL 1166309, at *5 (S.D.N.Y. Apr. 7, 2008)……………………………………………………………………………………15

*In re Palermo*, No. 08 CV 7421(RPP), 2011 WL 3874866, at *20 (S.D.N.Y. Sept. 2, 2011)……8

*Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724(PGG), 2010 WL 451045, at *4 (S.D.N.Y. Feb. 9, 2010)…………………………………………………………………………………...5, 14

*New Leadership Comm. v. Davidson,* 23 F.Supp.2d 301, 304–05 (E.D.N.Y.1998)………………7

*Pall Corp. v. 3M Purification Inc.*, No. CV 03-0092 RRM ETB, 2012 WL 1979297, at *6 (E.D.N.Y. June 1, 2012)…………………………………………………………………………13

*Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009)……………………………………………………………………………………8

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008)……………………………8, 13

*U.S.* v. *City of New York,* 07 CV 2067 (NGG) (RLM), 2013 WL 5542459, *8 (E.D.N.Y. Aug. 30, 2013)………………………………………………………………………………………6, 7

*Wise v. Kelly*, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008)……………………………………14

**Statutes**

42 U.S.C. § 1988…………………………………………………………………………………..2

**Other Authorities**

*Nationwide Sample of Law Firm Billing Rates*, The National Law Journal (Dec. 17, 2012)……11

Senate Report 2, House Report 1-3, U.S. Code Cong. & Admin. News 1976, p. 5910…………..2

iii

Plaintiff Daniel Fox submits this memorandum of law in support of his request for attorneys' fees and costs.

## INTRODUCTION

On May 28, 2020, this Court entered a Judgment against defendants Randolph Sanders and the Triborough Bridge and Tunnel Authority and in favor of plaintiff Daniel Fox. The Judgment was based on a jury verdict in plaintiff's favor on his Section 1983 claim for excessive force and municipal liability under *Monell* that was rendered on November 15, 2019 after a 4-day jury trial.  Pursuant to the Judgment, plaintiff now seeks reasonable attorneys' fees at a rate of $650 per hour for partners Guy Regev and Gary Zucker, $375 per hour for associate Daniel Rubin, as well as reasonable costs expended during the course of litigating this case. After a careful review of the firm's time entries, including eliminating charges for individuals who spent only a minimal number of hours on the case, and removing time that could be considered unnecessarily duplicative or excessive, plaintiff now seeks $300,750.00 in fees and $32,591.61 in costs, plus the reasonable fees that counsel was forced to expend in continuing to litigate this fee motion.[1]

---

[1] Reasonable fees are routinely awarded for work and time spent on litigating fee applications.  *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427-28 (2d Cir. 1999); *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("A reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees… such motion costs should be granted whenever underlying costs are allowed."); *See, e.g., Valley Disposal, Inc. v. Central Vermont Solid Waste Management District,* 71 F.3d 1053, 1059–60 (2d Cir.1995); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183–84 (2d Cir.1996); *Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir. 1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) The total fee amount currently listed ($300,750.00) reflects the reasonable fees for litigating the case through trial, plus the fees and costs for researching, preparing, and writing this motion through 3:00 p.m. on June 11, 2020.  We will supplement the total fees and detail the time spent litigating this motion including any additional work done today and for any reply brief in the final reply.

## FACTS

The relevant facts are recited in the accompanying Declaration of Guy S. Regev and, for the sake of judicial economy, will not be repeated herein.

## POINT I

## PLAINTIFF IS THE PREVAILING PARTY AND IS ENTITLED TO A COMPLETE AWARD OF HIS ATTORNEYS' FEES AND COSTS

### A.  Legal Standard for Awarding Fees

Because the Court has entered judgment in plaintiff's favor, he is entitled to an award of attorneys' fees and costs.  42 U.S.C. § 1988 specifically provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 [of this title], . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *See Roberson v. Giuliani*, 346 F.3d 75, 78 (2d Cir. 2003).

The purpose of the attorneys' fees provisions under the civil rights laws is to enable plaintiffs with valid claims to attract effective legal representation and thereby encourage private enforcement of civil rights statutes to the benefit of the public as a whole. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415 (1975); *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) (Brennan, J., dissent).[2] This oft-cited policy favoring fully compensable fee awards for prevailing

---

[2] The Supreme Court in *Hensley* quoted from the 1976 Senate report on the Civil Rights Attorney Fees Award Act, as follows:

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court. (citing Senate Report 2, House Report 1-3, U.S. Code Cong. & Admin. News 1976, p. 5910.) 461 U.S. at 44

plaintiffs is not just an abstract principle, but reflects a fundamental reality of legal practice nationally. In *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005), the Court recognized that if plaintiffs are unable to obtain ample attorneys' fees when they prevail in a civil rights case, there will be few or no "private attorney general" actions brought because few attorneys will be willing or able to take on such cases. Most significantly, the attorneys' fees provided under 42 U.S.C. § 1988 are intended to attract qualified counsel even in cases where the anticipated monetary recovery may otherwise be too small to create a contingency significantly attractive for representation in complex or protracted matters.

In the Second Circuit, "[a]ttorneys' fees are awarded by determining a presumptively reasonable fee." *See Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). Both the Second Circuit and United States Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – constitutes the presumptively reasonable fee. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010) (The lodestar figure has "become the guiding light of our fee-shifting jurisprudence." "[T]he lodestar method yields a fee that is presumptively sufficient" to "induce a capable attorney to undertake the representation of a meritorious civil rights case."). Thus, a court awarding fees must first calculate the lodestar. *See Millea*, 658 F.3d at 167.

A reasonable hourly rate is ordinarily determined by the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter* v. *MTA New York City Transit Authority,* 457 F.3d 224, 232 (2d Cir. 2006) (*quoting Blum* v. *Stenson,* 465 U.S. 886, 896 n.ll (1984)). The relevant "community" from which

this rate should be derived is "the district in which the court sits." *Polk* v. *New York State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983).

Once the court has determined the lodestar, it may depart from that amount only "*in exceptional circumstances.*" *Id.* at 169 (emphasis added). Ultimately, "'the most critical factor' in the district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained by the plaintiff.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Additionally, "a prevailing § 1983 plaintiff is entitled to recover reasonable attorney's fees… not only to the cost of obtaining a favorable judgment but also to the cost of successfully defending that judgment, [*i.e.*,] against postjudgment motions." *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("A culpable defendant should not be allowed to cause the erosion of fees awarded to the plaintiff for time spent in obtaining the favorable judgment by requiring additional time to be spent thereafter without compensation. Thus, a reasonable fee should be awarded for opposing the culpable defendant's unsuccessful postjudgment motions."); *see, e.g.*, *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424–428 (2d Cir. 1999); *Dailey v. Societe Generale*, 108 F.3d 451, 461 (2d Cir.1997).

The attorney's fees sought herein include compensation for the time spent preparing the instant fee application. It is well-established that "time reasonably spent by plaintiff's attorneys in establishing their fee [is] compensable." *Gagne* v. *Maher*, 594 F.2d 336, 344 (2d Cir. 1979) *affd* 448 U.S. 122 (1980); see *also Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for ... fees."). Compensating counsel for the time spent preparing a fee application is essential to avoiding the "'dilut[ion of] the value of a fees award by forcing attorneys into

extensive, uncompensated litigation in order to gain any fees.'" *Himmel v. Country in New York, LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011) (quoting *Gagne v. Maker,* 594 F.2d 336, 344 (2d Cir.1979)).[3]

Notwithstanding these requirements, the Supreme Court has "emphasize[d] that the determination of fees should not result in a second major litigation." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). Judges "need not, and indeed should not, become green-eyeshade accountants." *Id.* "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* In this case, counsel's rate and the amount of time spent on the litigation are reasonable, and therefore, plaintiff should be permitted to recover the full amount sought.

## B. Plaintiff's Counsel's Rates Are Reasonable and Correspond to the Prevailing Market Rate and Constitute Z&R's Customary Billing Rates

To determine the reasonable hourly rate for each attorney, "courts should rely on both evidence submitted by the parties as to the rates they typically charge," *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724(PGG), 2010 WL 451045, at *4 (S.D.N.Y. Feb. 9, 2010), and "the prevailing market rates for counsel of similar experience . . . in the relevant community," *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005). In considering the latter factor, a court may rely on its "own familiarity with the rates prevailing in the district" and "also requires an evaluation of evidence proffered by the parties." *Farbotko,* 433 F.3d at 209. "The rates used by the court should be current rather than historic hourly rates." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 243 (2d Cir. 2006)); *see also Mugavero*, 2010 WL

---

[3] If necessary, plaintiff will supplement his request for fees and costs to reflect all work done on this matter from this point forward - such as a Reply to the defendants' opposition papers or work to be performed in response to the Court's actions with respect to this fee application, including any appeal the parties may take.

451045, at *5-6 (awarding fees at current rates over defendant's objection, to account for fact that "law firm was not paid for [its] time in this case throughout these years").

As detailed in the accompanying Regev Declaration and the Exhibits attached thereto, Plaintiff's Counsel devoted substantial resources to litigating this action to achieve a favorable verdict in this litigation. In particular, Plaintiff's Counsel spent more than 584 hours of attorney and other professional support time litigating this matter. (Regev Decl. ¶ 54). Based on Plaintiff's Counsel's hourly rates, the total lodestar is $300,750.00. (Regev Decl. ¶ 54). The hourly rate of Plaintiff's Counsel is $650 for partners, and $375 for associates. *See Andrews v. Koch,* 554 F. Supp. 1099, 1101 (E.D.N.Y. 1983) (awarding fees based on "hourly rates normally charged" by partners and associates at New York City law firm).

Just as in 2013 in *U.S.* v. *City of New York,* 07 CV 2067 (NGG) (RLM), 2013 WL 5542459, *8 (E.D.N.Y. Aug. 30, 2013), this Court should again consider the fact that the instant action was a long-running litigation—three arduous years—involved numerous complex issues—concerning excessive force, qualified immunity, and municipal liability—and required diligent work by Plaintiff's litigation attorneys—expeditious discovery through trial and a post-judgement motion. The parties herein engaged in unusually contentious discovery that required high levels of skill and attention from counsel. *Id*. Plaintiff's counsel faced unique and significant obstacles in this litigation against a defendant with a team of attorneys, significant resources and seemingly unlimited resolve to oppose Plaintiff's every move. *Id*. Because this case has required extraordinary effort and skill, plaintiff's attorneys should be compensated proportionally. *Id*. Based on the extraordinary nature of this litigation, the efforts it has required of counsel, and the exceptional qualifications of the partners listed above, the court should award partner-level rates higher than those typically awarded in this district. *Id*.

The Court should also consider that this was an extraordinarily difficult case, among the reasons why this was a particularly difficult case is that Officer Sanders is African American, the plaintiff is Caucasian, and there were allegations that the plaintiff repeatedly used racial slurs and threats of injury towards Officer Sanders.

Plaintiff's proposed hourly rate cited above comports with those awarded to attorneys of comparable experience, reputation, and skill over the last decade and should be adjusted for inflation. In support of the instant motion, annexed hereto is a Declaration from the undersigned setting forth the firm's billing rates and detailed biographical information for each attorney. In fact, this Court in 2013 awarded attorneys' fees to civil rights attorneys at a rate of $550, recognizing that attorneys should be compensated proportionally for their extraordinary effort and skill. *See U.S.* v. *City of New York,* 07 CV 2067 (NGG) (RLM), 2013 WL 5542459, *8 (E.D.N.Y. Aug. 30, 2013). Adjusted for inflation, the rate of $550 in 2013 would be $612 in 2020 according to the U.S. Bureau of Labor Statistics. In addition, Zucker & Regev partners have significantly more experience and relevant medical expertise than the attorneys in *U.S.* v. *City of New York*.

Furthermore, the rates charged by plaintiff's counsel are similar to those used to calculate fees in the neighboring Southern District. The Eastern District recognizes that "Brooklyn and Manhattan are integral parts of a single city" and that "it is not necessarily improper to consider what is occurring minutes away across the East River." *New Leadership Comm. v. Davidson,* 23 F.Supp.2d 301, 304–05 (E.D.N.Y.1998) (discussing at length the closely intertwined nature of the Southern and Eastern Districts of New York and holding that "it is within the court's broad discretion to consider the unique circumstance of lawyers in New York City who practice in two different federal jurisdictions within the same city.") *citing Polk v. New York State Dept. of*

*Correctional Services,* 722 F.2d 23 (2d Cir.1983). As shown below, the Southern District has awarded attorney's fees similar to those plaintiff's counsel seeks now. *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding fees at rate of $600 for partners, adjusted for inflation would be $728 in 2020 according to the Bureau of Labor Statistics); *See Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (awarding a discounted fee rate of $575 in consideration of the short duration and uncomplex nature of the case); *Torres v. Gristede's Operating Corp.*, 2012 WL 3878144, at *3; *Scott v. City of New York*, 643 F.3d 56, 59–60 (2d Cir. 2011) (approving Southern District judge's determination that $550 per hour in a FLSA case was reasonable); *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378(RJS), 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) (awarding fees at rate of $550 for partner); *In re Palermo*, No. 08 CV 7421(RPP), 2011 WL 3874866, at *20 (S.D.N.Y. Sept. 2, 2011) (awarding partner rate of $525 per hour); *Creighton v. Dominican Coll.*, No. C09-3983Z, 2011 WL 4914724, at *6 (awarding fees at rate of $550 for partner and $395 for senior associate); *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010) (awarding fees at rate of $500 and $550 for partners); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *4-5 (S.D.N.Y. Sept. 29, 2009) (awarding fees at rates of $500 and $450 for primary lawyers in employment discrimination case).

Additionally, the skill-level, experience, and reputation of the specific attorneys involved in this case lends further support to the reasonableness of their proposed rates.

I obtained my undergraduate degree in Economics and premedical coursework from Duke University, graduating early in just 3 years. Thereafter I attended Indiana University School of Medicine, one of the top medical schools in the United States. While at Indiana University School of Medicine, I pursued a Master of Business Administration degree at the

Kelley School of Business in Indiana University, a top 15 business school in the U.S. In addition, I spent time working at various hospitals including Sourasky Medical Center in Tel Aviv as a medical and surgical extern. I completed all the USMLE medical licensing examinations which include Step 1, Step 2, and Step 3. I am one of the few trial attorneys in the country who possess a medical degree and an extensive academic medical research background.

For over a decade, I was actively involved in medical and scientific research at various premier laboratories around the United States, including the University of Miami School of Medicine, Bascom Palmer Eye Institute, and continuing with Indiana University School of Medicine Molecular Biology Department and Department of Ophthalmology. I also published articles on a variety of topics in high impact medical journals.

I was among the first class of twelve students at Brooklyn Law School to obtain a juris doctorate degree in an accelerated two-year program. During this program, I also served as the Brooklyn Law School Health Law Fellow.

Immediately following graduation from medical school, I began advising law firms on complex medical legal issues involving personal injury cases. I have advised some of the largest firms in New York on high profile negligence cases.

I have conducted and defended hundreds of defendant and plaintiff depositions in highly complex negligence matters. I have also obtained high value recoveries in personal injury cases. Just last year, I procured a $1 million-dollar verdict in a case involving the negligent removal of a colon in Kings County Supreme Court (*George v. Duperval*, Index No.: 0018706/2013) and a $1.4 million-dollar settlement in a case involving the negligent failure to diagnose a pelvic infection resulting in severe injuries (*King v. NYCHHC*, Index No.: 501842/16). I also have experience in federal court. Last year, I obtained a $425,000 settlement in the Eastern District of

New York (*Grimsley v. USA*, 17-CV-5811 (SJ)(JO)) and the year before I obtained an $800,000

settlement in the Southern District of New York (*Derbarmdiger* v. *USA*).

After joining the firm as a medical consultant in 2014, I formed the partnership, Zucker

& Regev, P.C., which is dedicated to helping victims of general and medical negligence. My

unique background in both medicine and law allows me to have an enormous advantage over his

adversaries because he is able to understand highly complex medical issues pertaining to

personal injuries and is most capable of conveying these issues to jurors. The amount of

education and training that I earned in order to achieve this level of competence in medical/legal

issues is first in its class.

My training makes me uniquely qualified, not just to litigate medical malpractice cases,

but also to properly investigate, litigate, understand, and explain injuries and financial

repercussions related to general personal injury actions. For example, Mr. Fox suffered from a

cystic lesion of a bone in his foot as well as a complex pain syndrome, which are diagnoses that

many attorneys would have difficulty not only understanding but also conveying to jurors. In

addition, my medical background trained me to effectively communicate and question witnesses

in all phases of litigation.

I am able to research, comprehend, and communicate the prognosis of an injury; review

and evaluate medical records to find and interpret relevant information; read and communicate

imaging films and reports to explain to jurors; cross-examine medical witnesses during

depositions and trials regarding medical issues pertaining to causation; review, understand, and

interpret medical examination reports written by physicians and examining doctors;

communicate complex concepts related to injuries to jurors and the Court; and question

witnesses to elicit responsive questions.

After Brooklyn Law School, Mr. Zucker worked as an Assistant District Attorney in Kings County, New York and has tried dozens of criminal, personal injury and medical malpractice cases. Mr. Zucker has been awarded an AV pre-eminent rating by Martindale-Hubbell, representing the highest rating for professional excellence based upon voting by his peers. In addition, Mr. Zucker has been selected to the 2015, 2016 and 2017 editions of New York Super Lawyers and the New York Law Journal Motor Vehicle Verdicts and Settlements Hall of Fame.

Mr. Zucker has experience in federal court as well, and recently obtained a $425,000 settlement in the Eastern District of New York (*Boise v. Spectrum*, 14-CV-01163). Mr. Zucker has over 35 years of experience in personal injury and this litigation experience began with experience in criminal matters in Kings County. Mr. Zucker has litigated in both the Eastern and Southern Districts of New York, the Eastern District of Pennsylvania as well as the United States Court of Appeals for the Second Circuit involving cases ranging from civil rights to products liability to medical malpractice to breach of contract. Just in the past 5 years, the partners at Zucker & Regev have litigated a variety of cases in federal court, including *Hernandez v. U.S.* in 2014 and *Zaidan* v. *U.S.* in 2016, among other matters.

Mr. Zucker is widely known to be among the most aggressive and successful personal injury and medical malpractice attorneys in New York. Among his significant recoveries include a $10.5 million recovery in a brain injury case, a $6 million recovery in a wrongful death case, and a $5.37 million brain injury case, and many others. I assisted Mr. Zucker with the evaluation and medical issues in several of these high value cases.

Mr. Rubin graduated from Binghamton University and Pace University School of Law *cum laude*, where he was a Senior Associate of the Pace International Law Review. Prior to

joining the firm, Mr. Rubin worked as a law clerk for the Honorable Sam Watkins, Jr., Village

Justice of Croton-on-Hudson, and as an intern for the Honorable Mary Anne Scatteretico-Naber,

Judge of the Yonkers Family Court as well as the New York State Office of the Attorney

General, Westchester Regional Office. Since joining the firm, Mr. Rubin has worked for over

two years representing clients who suffered injuries or death due to medical malpractice and

catastrophic personal injury cases. During his time at Z&R, Mr. Rubin represented clients in all

aspects of their cases, handling a caseload of up to 100 or more clients at a time. Mr. Rubin

second chaired four high profile personal injury cases, appeared at numerous hearings, filed

numerous successful motions on behalf of his clients, and made all necessary court appearances

for his clients during his time at Z&R. Mr. Rubin conducted dozens of depositions each year,

assisted in preparing nearly all litigation papers and motions, and second chaired part of this

federal trial. Since joining the firm in January 2018, Mr. Rubin has continued to work on an

intensive and challenging caseload of medical malpractice and personal injury cases, including

civil rights. His work at firm has ranged from client intake, to depositions, to drafting motion

responses and Appellate Briefs. Mr. Rubin has ample knowledge, skill, and expertise in the areas

of medical malpractice and civil rights law.

The rates requested by counsel are significantly lower than the rates charged by senior

partners in many New York City law firms.  According to the National Law Journal's survey of

billing rates from *8 years ago*, partners in many New York City firms frequently charge upwards

of $750 and even $950 an hour.  *See Nationwide Sample of Law Firm Billing Rates*, The

National Law Journal (Dec. 17, 2012).[4] In the National Law Journal's survey, the average

median billing rate for partners at the New York City firms in the nationwide sampling was

---

[4] *available at*
http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?germane=1202581351631&id=1202581266427&interactive=true

greater than $600.  *Id.*  Likewise, associates in many City firms charge in excess of $450 dollars per hour, with some associates billing in excess of $600 dollars per hour.  *Id.*  Measured against these similar rates, which defendants routinely pay, Counsel's proposed rates are eminently reasonable.

The time and labor required to litigate this action and oppose the Defendants' motions was significant and establishes that the requested fee of $650 for partners and $375 for associates is justified and well within the range of "prevailing market rates in the relevant community." *Perdue,* 130 S. Ct at 1672 (quoting *Blum,* 465 U.S. at 895). The declaration and exhibits attached thereto detail the substantial efforts of Plaintiff's Counsel to litigate this matter. Therefore, it is respectfully submitted that, upon applying the lodestar analysis, the Court should adopt the proposed $650 per hour rate for the partners and $375 for the associates of plaintiff's counsel.

## POINT II

### THE HOURS EXPENDED LITIGATING MR. FOX'S CASE ARE REASONABLE

The Supreme Court has noted that a reasonable hourly fee will normally encompass all hours reasonably expended on the litigation. *Hensley,* 461 U.S. at 435. In determining whether an attorney's expenditure of time is compensable, "the relevant issue [ ] is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). A party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous records. *See New York State Ass'n for Retarded Children* v. *Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). In litigating Mr. Fox's case, plaintiff's counsel expended a combined total of more than 548 hours. (*See* Regev Decl. ¶ 54). Exhibit A to the Regev Decl. contains accurate, detailed and contemporaneous time records

maintained by plaintiff's counsel's firm. The records are sufficiently specific and detailed so the Court can determine the nature of the work performed. The hours expended by counsel were necessary and entirely reasonable, and counsel are entitled to full payment for their efforts.

In accordance with Z&R's practice of utilizing the least expensive level of personnel where appropriate and consistent with the highest professional standards, Z&R used its associate attorney whenever possible. (Regev Decl. ¶ 53). Plaintiff's counsel seeks compensation only for time reasonably expended on this case, and, in the exercise of billing judgment, has deleted all arguably excessive or duplicative hours. Mr. Regev spent a total of 223.1 hours on this litigation, Mr. Zucker spent 73.9 hours on this litigation, and Mr. Rubin spent 287.2 hours on this litigation. The hours expended by counsel were necessary and entirely reasonable, and counsel are entitled to full payment for their efforts at the requested hourly rate of $650 (for partners Mr. Regev and Mr. Zucker) and $375 (for associate Mr. Rubin), therefore, plaintiffs are requesting $300,750.00. (*See* Regev Decl. ¶ 54).

To the extent that Mr. Regev and Mr. Rubin occasionally charged for the same activities, it was for essential tasks such as the depositions of key witnesses and one day of trial. Courts have recognized that having more than one attorney present at such moments is entirely appropriate and fully compensable. *Pall Corp. v. 3M Purification Inc.*, No. CV 03-0092 RRM ETB, 2012 WL 1979297, at *6 (E.D.N.Y. June 1, 2012); *see Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008)(no reduction in hours indicated where two attorneys present at "the most critical points in the litigation, such as the depositions of key witnesses."). Moreover, the time spent by counsel preparing for and taking depositions, and conducting a four-day federal trial, was particularly well spent. The value of this work is evidenced by the jury's verdict.

It was also necessary for counsel to engage in internal discussions about the case in order to develop effective litigation strategies and to assign tasks as efficiently and inexpensively as possible. As one judge in the Southern District observed, "[a]ny joint endeavor requires communication among those involved to ensure that everyone is working toward the same objective, that two people do not independently do the same thing twice, and that the insights and knowledge of all concerned are combined in the interest of achieving the common goal." *Harrington Haley LLP v. Nutmeg Ins. Co.*, 39 F. Supp. 2d 403, 411 (S.D.N.Y. 1999). Accordingly, conferences, phone calls, and emails between members of plaintiff's legal team were an essential component of developing and effectively litigating his case, and are fully compensable. *See Wise v. Kelly*, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008) (declining to reduce a fee request for time spent in internal conferences); *Harrington*, 39 F. Supp. 2d at 411-12 (holding that time spent in attorney conferences was reasonable and necessary to ensure that "the right hand [knows] what the left hand is doing").

The Court is well positioned to evaluate the hours counsel worked because of the care counsel took in timekeeping. As explained in counsel's declaration, all attorneys and paralegals at Z&R maintain contemporaneous time records reflecting their time spent on each case. (Regev Decl. ¶ 2). Those time records include detailed explanations identifying each discrete task performed each day in six-minute (tenth-of-an-hour) increments. *See, e.g.*, *Mugavero*, 2010 WL 451045, at *6 (court "must consider . . . the 'contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done.'" (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Moreover, to the extent that the defendants may attempt to challenge any entries as vague, a "[d]efendant['s] complaint about lack of specificity in the work summaries does not, in itself, justify their demand

15

for a substantial reduction in compensable time." *Raniola v. Bratton,* No. 96 Civ. 4482 (MDD), 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003). That is because "counsel [ ] is not required to record in great detail how each minute of his time was expended" so long as time entries "identify the general subject matter of [counsel's] time expenditures." *Hensley v. Eckerhart,* 461 U.S. 424, 437 n.12 (1983)). A time entry is sufficiently precise if it enables "the Court to assess the reasonableness of the amount charged in relation to the work performed." *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *5 (S.D.N.Y. Apr. 7, 2008) (declining to reduce fees despite challenge to lack of specificity).

## POINT III

## APPLYING THE JOHNSON FACTORS, THE FEES REQUESTED ARE REASONABLE

As explained above, the lodestar, *i.e.*, the combination of counsel's billing rate and the number of hours worked, dictates the fee award in all but the most extraordinary cases. *See Millea,* 658 F.3d at 166; *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010). Thus, for all of the reasons set forth above, counsel's proposed rates and the number of hours expended in the litigation were all reasonable, making further analysis unnecessary because there are no extraordinary circumstances in this case that warrant increasing or decreasing fees above or below the lodestar amount.

Nonetheless, an assessment of the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), reveals that the balance of other "case-specific variables" courts consider in awarding fees weighs strongly in favor of plaintiff, confirming that the fees sought here are reasonable. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (explaining that, in determining the reasonable fee in a case, courts may consider "all of the case-specific variables

16

that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including "among others, the *Johnson* factors"):

(1)     The Time and Labor Required.  As noted throughout this brief, plaintiff's counsel was required to expend considerable time and effort not only in litigating and trying plaintiff's case, but also for defendants' post-judgment motion and the instant fee application.

(2)     The Novelty and Difficulty of the Questions.  The main issues in this case were the reasonableness of the force used, and the breadth of injuries sustained by Mr. Fox on June 28, 2017, which necessitated an initial records collection and analysis process consistent with the average excessive force case. Additional time, skill and expertise was required to locate and retain plaintiff's expert, Craig S. Radnay, M.D. That said, issues in this case -- proper procedure for use of force by Bridge and Tunnel Officers, and the scope of Mr. Fox's orthopedic injuries -- were not entirely straightforward. This factor weighs in favor of plaintiff.

(3)     The Level of Skill Required to Perform the Legal Services Properly.  Litigating this case required a great deal of care and familiarity with the standards for establishing an excessive force claim, establishing a permanent injury, and otherwise successfully trying a federal case against a skilled and highly resourced adversary.

(4)     The Preclusion of Employment by the Attorney Due to Acceptance of the Case.  Because of the significant amount of time expended in this case, including the years of litigation, all the hours recorded in the timesheets, weeks of preparation for and conducting a four-day trial, the attorneys working on it were not able to work on other litigation.

(5)      The Attorney's Customary Hourly Rate.  As set forth in this Memorandum of Law and the Regev Declaration, the rates used in this application are similar, or even lower than, other rates charged by comparably situated attorneys.

(6)      Whether the Fee is Fixed or Contingent.  While the contingent nature of the case no longer serves as the basis for a multiplier, *see City of Burlington v. Dague*, 505 U.S. 557 (1992), it surely serves as a basis for selecting hourly rates at the higher end of the scale.  As in most civil rights actions, counsel in this case relied on the fee-shifting provisions to provide them with compensation for their services and have not been paid throughout the case.  Thus, the sixth *Johnson* factor likewise favors plaintiff obtaining his full fee.

(7)      Time Limitations Imposed by the Clients or the Circumstances.  The time limitations imposed by the circumstances of the case were substantial.

(8)       The Amount Involved in the Case and the Results Obtained.  Plaintiff obtained a judgment in his favor in the amount of $250,000.00, and is entitled by statute to reasonable attorneys' fees, costs, and expenses to date.  That result constituted a significant victory for plaintiff, by both vindicating his rights and providing a measure of financial compensation.

(9)      The Experience, Reputation, and Ability of the Attorneys.  The Regev Declaration describes the extensive experience the lawyers involved in this matter have litigating cases.

(10)      The "Undesirability" of the Case.  Suing a Bridge and Tunnel Officer and the TBTA is a challenging undertaking for any small or medium-sized firm with limited resources. In fact, Zucker & Regev had to take over the case from another attorney due to issues which arose regarding the desirability of the case.

(11)     The Nature and Length of the Professional Relationship with the Client.  A close

relationship developed between plaintiff's counsel and plaintiff in the time during which this

case was litigated.

(12)     Awards in Similar Cases.  As set forth at length above, courts in New York have awarded

fees in accordance with the rates requested here.

Accordingly, the twelve *Johnson* factors weigh in favor of awarding plaintiff's full fee

here.

## POINT IV

## PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF HIS COSTS

Plaintiff's litigation costs were carefully tracked and recorded as they were accrued.

(Regev Decl. ¶ 2). They are summarized here and detailed in the disbursement records annexed

as Exhibit 2 to the Regev Declaration.

| Category | Amount | Category | Amount |
|---|---|---|---|
| Supplies | $353.15 | Car fare | $267.08 |
| Process Server | $1,094.63 | Legal Research | $4,442.10 |
| Court Reporters | $8,684.67 | Fedex/Messenger | $126.18 |
| Medical Records | $23.80 | Expert Review of Records and Testimony | $17,600 |

**Total: $32,591.61**

Plaintiff respectfully submits that the Court should award $32,591.61 in costs. *See* Regev

Decl. ¶¶ 58 & 59 and Exhibit B. The costs for service of process, messenger services and

document retrieval costs are reasonable and required in order to responsibly investigate,

maintain, and prosecute the action. *See*, *e.g., Green* v. *City of New York,* 05 CV 429 (DLI)

(ETB), 2009 WL 3088419, *11 (E.D.N.Y. Feb. 13, 2009), *report and recommendation adopted*

*in part,* 05 CV 429 (SLT) (ETB), 2009 WL 3063059 (E.D.N.Y. Sept. 21, 2009) ("The expenditures incurred in the within action include costs for legal research, postage, overnight mail delivery, court reporters, and messenger services, all of which are routinely recoverable.") (collecting cases).

## **CONCLUSION**

For the foregoing reasons and based on the evidence presented we respectfully request that the Court award Mr. Fox all requested attorneys' fees and costs.

Dated: Brooklyn, New York
   June 11, 2020

        ZUCKER & REGEV P.C.

        _____/s/ Guy S Regev ( 6773)_____
        Guy S. Regev
        186 Joralemon Street, Suite 1010
        Brooklyn, New York 11201
        (718) 624-1211
        gregev@zucker-regev.com
        *Attorneys for Plaintiff Daniel Fox*

To:  Paul Krez, Esq. (by mail and email)

   KREZ & FLORES, LLP
   Attorneys for Defendants
   225 Broadway
   Suite 2800
   New York, NY 10007-3001