UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DANIEL FOX,

                      17-CV-4143 (NGG)(JO)

        Plaintiff,

  -against-

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,
and Officer RANDOLPH SANDERS,

        Defendants.
------------------------------------------------------------------------X

## DECLARATION OF GUY S. REGEV IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

**GUY S. REGEV** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

  1.  I am a partner of the firm of Zucker & Regev, P.C. ("Z&R") and am lead counsel for Plaintiff DANIEL FOX in this matter. I make this declaration in support of the instant application for attorneys' fees and costs pursuant Rule 54 of the Federal Rules of Civil Procedure following the Judgment entered in Mr. Fox's favor on May 28, 2020, covering the hours and costs expended by Daniel B. Rubin, Esq., Gary A. Zucker, Esq., and myself in prosecuting this action. I am familiar with the facts discussed herein and attach as exhibits true and correct copies of the documents mentioned herein.

  2.  All attorneys and paralegals at Z&R maintained contemporaneous time records reflecting the time spent on this matter. The time entries were entered into a computer program. The timekeeper indicates the date and amount of time spent on a task and describes the work that was performed during the specified time-period. Attached hereto as Exhibit 1 is a full and

correct copy of those time entries relating to the work conducted on behalf of Mr. Fox in this action.

## Z&R'S INVOLVEMENT IN THE MATTER

3. I have been lead counsel on this case since Mr. Fox first contacted my law firm to inquire about prosecuting a civil rights action against defendants Triborough Bridge and Tunnel Authority ("TBTA"), Bridge and Tunnel Officers Randolph Sanders, Keisha Johnson, and Bridge and Tunnel Sergeant Laura Tully.

4. Mr. Fox prevailed at trial and defeated a post-judgment motion concerning an excessive force and *Monell* claim arising from an incident which occurred on June 28, 2017, at approximately 6:30 p.m. on the Marine Parkway-Gil Hodges Bridge while Mr. Fox was riding his bicycle across the bridge from Brooklyn to Far Rockaway, New York at which time defendant BTO Randolph Sanders, who was not patrolling the pathway for bicycle violations at that moment, instructed Mr. Fox to dismount his bicycle and walk the bicycle across the bridge. BTO Sanders neither called for back-up nor radioed the NYPD with a description of Mr. Fox to stop Mr. Fox and issue a summons/violation for riding his bicycle across the bridge. Instead, BTO Sanders testified that, for the first time in his career with the TBTA, he drove his patrol vehicle to the other side of the bridge and waited on the pathway to stop Mr. Fox

5. As Mr. Fox approached BTO Sanders in an attempt to ride past him, BTO Sanders intentionally, unnecessarily, and violently assaulted Mr. Fox by pushing him against the concrete barrier causing him to flip over his bicycle and sustain multiple injuries, including injury to his right foot and ankle, multiple bruises and contusions about his face and body, as well as abrasions of both knees, arms, elbows, hands, and legs. Following the assault, BTO Sanders prevented Mr. Fox from continuing his trip to Far Rockaway and consequently, Mr. Fox

was forced to return back across the bridge to Brooklyn where he was unlawfully detained by BTO Keisha Johnson and Bridge and Tunnel Sergeant Laura Tully.[1] Mr. Fox was never issued a summons or a ticket for riding his bicycle across the Marine Parkway-Gil Hodges Bridge.

As a result of BTO Sanders' use of excessive force, Mr. Fox sustained physical injuries and emotional distress. Mr. Fox first sought medical treatment on the same date of the incident at the Mount Sinai Brooklyn Hospital emergency room, reporting that he had sustained an injury to his right ankle and abrasions to both knees, arms, hands, and legs after being thrown off his bicycle by a Bridge and Tunnel Officer. Mr. Fox was unable to bear weight on his right ankle and the x-rays taken at Mount Sinai revealed soft tissue swelling at the lateral malleolus and a sprain. Mr. Fox was provided with crutches and a posterior ankle splint and was instructed to remain non-weightbearing, rest, apply ice/compression, and keep his right foot elevated. Due to continuous and worsening pain, Mr. Fox thereafter followed up with Dr. Matthew Wert, an orthopedic surgeon, who treated him from July 5, 2018 to October 24, 2017. Mr. Fox underwent an MRI on July 10, 2017 which revealed the following findings:

> Extensive soft tissue swelling. Bone contusions of distal tibia, talus, anterior aspect calcaneus and cuboid bones. Slight depressed fracture inferior aspect of head/neck of talus. Small nondisplaced fracture plantar cuboid. Tenosynovitis of posterior tibial, long flexor, peroneal tendons. Tear of anterior talofibular and sprain of calcaneofibular ligaments. Tear of deep fibers of deltoid ligament. Effusions of posterior subtalar and talonavicular joints.

Based on the MRI results, Dr. Wert placed Mr. Fox's right foot in a boot and instructed him to remain non-weightbearing and to progress to partial weightbearing. A subsequent right ankle MRI was performed on October 20, 2017 which revealed:

---

[1] Plaintiff initially brought suit against two additional Defendants: Sergeant Laura Tully and Officer Keisha Johnson. (See Compl. (Dkt. 1).) However, Plaintiff withdrew his claims against Tully and Johnson during trial. (See Trial Tr. at 56:11-18.)

3

> Lateral subcutaneous edema. Sprain of anterior talofibular ligament with thickening and surrounding edema. Sprain of calcaneofibular ligament. Small tibiotalar joint effusion. Focal subchondral lesion in lateral talar dome with bone marrow edema. Mild degenerative changes of subtalar joint. Mild tenosynovitis posterior tibial tendon.

Mr. Fox was subsequently seen by Dr. Jaime Uribe, a foot and ankle specialist on December 13, 2017 who recommended guarded weightbearing using the boot, continued physical therapy and a trial course of calcitonin. Nearly a year after the incident on May 3, 2018, Mr. Fox underwent a right lower extremity CT Scan which revealed small bone fragments at the tip of the lateral malleolus and along the deltoid ligament compatible with previous injury as well as lateral talar dome subchondral cystic changes. On May 11, 2018, Mr. Fox was examined by Dr. Craig S. Radnay, an orthopedic foot and ankle specialist, who reported that he still had complaints of pain, swelling, and stiffness in his right foot and ankle despite shoe wear modification, non-weightbearing, bracing, anti-inflammatory medications, and a completed course of physical therapy. Mr. Fox reported to Dr. Radnay that he has been non-weightbearing since the incident of June 28, 2017 and was still using crutches all the time. Dr. Radnay concluded, based on the history, review of the medical records, and his examination, that Mr. Fox's injuries were causally related to the incident and that he may also have developed a degree of chronic regional pain syndrome which was limiting his recovery. Dr. Radnay's prognosis for a full recovery was poor.

6. Mr. Fox initially retained the firm of The Law Office of Scott G. Cerbin, Esq. PLLC, who filed the Complaint and subsequent Amended Complaint. However, Mr. Fo thereafter retained my firm which fully investigated his claims. In addition to meeting with Mr. Fox, we pursued, gathered, and reviewed his medical records, and investigated the incident.

*DISCOVERY*

7. At the status conference on April 4, 2018, we were directed by Magistrate Judge Orenstein to adhere to the existing schedule and were informed that plaintiff's decision to engage new counsel would not serve to stay or adjourn any deadlines. (ECF Doc. 27 and 28). From the outset, we were required to work efficiently and swiftly under a truncated discovery schedule, notwithstanding prior counsel's failure to request key discovery pertinent to any §1983 claim.

8. A review of prior counsel's file revealed that no request had been made for records of prior complaints, disciplinary actions, or internal investigations of alleged misconduct involving the defendant officers. Due to the time constraints of the Case Management and Scheduling Order, my partner, Gary Zucker, filed a letter motion on April 23, 2018 requesting an Order directing the defendants to provide plaintiff's counsel with the aforementioned records. (ECF Doc. 29). However, because plaintiff had not made a document demand to which the defendants had failed to respond, said motion was denied without prejudice to the plaintiff's right to seek appropriate relief should defendants fail to respond to a properly served discovery request. (Order of April 25, 2018).

9. Plaintiff's deposition was held on April 19, 2018.

10. The undersigned, assisted by Mr. Rubin, conducted the deposition of defendant Sanders on April 25, 2018 and learned on that date that there was another TBTA employee who witnessed an encounter between plaintiff and BTO Sanders shortly before the incident in which plaintiff was injured.

11. On April 25, 2018 Mr. Zucker joined defendants in a request to extend discovery for an additional 30 days due to the outstanding depositions of defendants Johnson and Sergeant Tully. (ECF Doc. 31). My office then served defense counsel with demands for production of

5

records of prior incidents of alleged misconduct; copies of videos showing the initial encounter between Mr. Fox and BTO Sanders, copies of TBTA radio communications concerning the incident; and all training materials pertaining to vehicle and bicycle stops, proper wearing of uniforms, use of force, and documentation of incidents, including Aided Reports. (ECF Doc. 31). The motion to adjourn the pretrial conference, originally scheduled for May 10, 2018, was granted and it was adjourned to May 25, 2018. (Order of May 9, 2018).

12. On May 8, 2018, the undersigned, assisted by Mr. Rubin, conducted the depositions of defendants Johnson and Tully.

13. On May 9, 2018, the undersigned, assisted by Mr. Rubin, conducted the depositions of non-party witness Bridge and Tunnel Maintainer Vincent Aspiromonte.

14. On May 22, 2018, Mr. Fox's parents were deposed by the defendants.

*Expert Discovery*

15. Due to the nature of this case, Plaintiff retained Police Expert, Joseph A. Pollini, a retired Lieutenant Commander of the New York City Police Department, to investigate the incident, including a review of the surveillance videos and a survey of the scene of the incident and report of his findings.

16. On May 1, 2018, Mr. Pollini, Mr. Rubin, and I travelled to the Marine Parkway-Gil Hodges Bridge to inspect, measure, and research the site of the incident for an accurate depiction of the layout to determine if there was enough space for a bicyclist to pass next to defendant Sanders. Given these facts, it was reasonable for plaintiff to seek independent advice from an expert on police practices on such a key issue in the case.

17. However, at the Interim Pretrial Conference on May 25, 2018, Magistrate Judge Orenstein excluded Mr. Polini's expert testimony about police practices due to the fact that his

6

report was disclosed after the end of the discovery period and defendants had not yet prepared a response.

18.     Given the severity of Mr. Fox's injuries, Mr. Fox was evaluated and referred by the undersigned for an examination by Dr. Craig S. Radnay, a board-certified orthopedic foot and ankle surgeon.

19.     Dr. Radnay confirmed that Mr. Fox's continued symptoms were causally related to the incident and stated that his prognosis for recovery was poor. Dr. Radnay's report was served together with plaintiff's expert disclosure on May 23, 2018.

20.     The undersigned accompanied plaintiff for a defense examination on April 12, 2018.

21.     At the Pretrial Interim Conference on May 25, 2018, the Court denied defendants motion to exclude Dr. Radnay's expert medical testimony as allegedly untimely.

*Discovery Motion Practice and Filings*

22.     In addition to the holdings recited above, Magistrate Judge Orenstein ruled on several discovery disputes that were raised at the May 25, 2018 conference and denied plaintiff's motion to compel the production of documents and video recordings of a prior incident as untimely.

23.     On May 30, 2018, my partner, Mr. Zucker, filed a motion to reconsider the Order of May 25, 2018 for the reason that it was inconsistent with and directly contravened the prior order of April 24, 2018, and again requested that plaintiff be permitted to call Joseph Pollini as an expert witness regarding police practices. (ECF Doc. 34).

24.     On May 31, 2018, Magistrate Judge Orenstein denied the motion for reconsideration. (Order of May 31, 2018).

25. Subsequently, on June 8, 2018, Mr. Zucker filed a motion, pursuant to FRCP 72, to modify the orders of Magistrate Judge Orenstein dated May 25, 2018 and May 31, 2018 or, alternatively, to extend the deadline for the closure of discovery pursuant to FRCP 16(b) in order to allow plaintiffs to make a motion to compel defendants to respond to plaintiff's discovery request or provide same. (ECF Docs 36 through 39).

26. On June 20, 2018, Mr. Zucker wrote a letter to Your Honor citing a recent decision from the Southern District of New York addressing the factors to be considered on Plaintiff's Rule 72 motion. (ECF Doc. 40).

27. On June 28, 2018, Mr. Zucker wrote a second letter requesting permission to file a corrected Declaration and Memorandum of law fixing certain non-substantive errors. (ECF Doc. 48).

28. The motion to modify the Magistrate's Orders was fully briefed on June 29, 2018 and was denied by Order dated July 20, 2018. However, the Court extended the discovery deadline until September 4, 2019 for the limited purposes set out in the Order. (ECF Doc. 51).

29. On June 21, 2018, both parties filed proposed Joint Pretrial Orders. (ECF Docs 41 and 42).

30. Pursuant to the Order of July 20, 2018, (ECF Doc. 51), plaintiff filed a letter motion with the Court on July 24, 2018 requesting an extension of time for completion of expert disclosure. (ECF Doc. 52).

31. Said motion was denied by the Court by Order of July 30, 2018. (Order of July 20, 2018).

32. On August 3, 2018, Plaintiff's counsel was directed to file a letter motion to compel Defendants to respond to several discovery requests sent between April 2018 and May

2018, notwithstanding that certain discovery had been in defendants' possession for several months. (ECF Doc. 54).

33. Said motion was denied by Order of August 9, 2018 to the extent that plaintiff was permitted to file a motion to compel the requested discovery by September 7, 2018.

34. My office worked diligently and expeditiously to file a seventh motion on September 7, 2018 seeking any prior complaints or disciplinary actions of the defendants and video footage of the Brooklyn side of the bridge before the violent encounter, or alternatively, for an affidavit from an individual with personal knowledge as to the non-existence of any prior complaints and video record-keeping practices. (ECF Doc. 56).

35. At a status conference on September 25, 2018, plaintiff's seventh motion for discovery was denied by Magistrate Judge Orenstein.

***Pretrial Motion Practice and Filings***

36. The undersigned appeared before Your Honor for a pretrial conference on April 19, 2019 at which jury selection was scheduled to begin on September 30, 2019. However, by Order, dated September 20, 2019, jury selection and trial were adjourned to November 12, 2019.

37. On October 9, 2019, defendants served plaintiff with an ill-disguised summary judgment motion, denoted as a motion *in limine* seeking, *inter alia,* to preclude plaintiff from offering any testimony or evidence on his *Monell* claim. (ECF Doc. 72).

38. With only 30 days left before trial, plaintiff's counsel was required to spend significant time and resources to effectively oppose defendants' motion, notwithstanding this Court's prior Orders precluding defendants from making a summary judgement motion because of their own failure to move within the time frame prescribed by the Court.

9

39. Plaintiff filed opposition papers to defendants' motion *in limine* on October 23, 2019 (ECF Doc. 79) and defendants submitted a reply on October 30, 2019. (ECF Doc. 86).

40. On October 11, 2019, Plaintiff filed a motion *in limine*, (ECF Doc. 73). Defendants submitted a memorandum in opposition (ECF Doc. 74) and plaintiff submitted a reply on October 23, 2019. (ECF Doc. 80). The Court thereafter directed both parties to appear for a conference to discuss the *Monell* issue. (Order of October 31, 2019).

41. Prior to trial, the undersigned prepared a confidential *ex parte* settlement letter, a joint pre-trial order, trial brief, and drafted and submitted requests to charge and proposed *voir dire*. (ECF Docs. 81, 82, and 84).

42. The undersigned also complied with the Court's directive to submit transcripts of the radio transmissions of the defendants intended to offer into evidence at trial. (Order of November 7, 2019).

43. Additionally, the undersigned spent many hours preparing Mr. Fox, as well as his mother and Dr. Radnay for their trial testimony and prepared cross-examinations of defendant's medical expert, Dr. Herbert Sherry, as well as defendants Sanders, Tully, Johnson, and non-party witness Mr. Aspromonte.

### ***The Trial***

44. Jury selection was conducted on November 12, 2019. Opening statements of counsel were delivered on November 13, 2019.

45. After four days of testimony from the plaintiff, his mother, plaintiff's medical expert, Dr. Radnay, defendants' medical expert, Dr. Sherry, Mr. Aspromonte, defendants Sanders, Tully, and Johnson, followed by closing arguments and a charge conference, the jury began its deliberations on November 15, 2019.

46. Following plaintiff's case, defendants made a motion to dismiss which was denied and later renewed and again denied after the close of defendants' case. (ECF Doc. 100).

47. In the early evening on November 15, 2019, the jury returned a verdict in Mr. Fox's favor in the amount of $75,000 on his excessive force claim and $175,000 on the municipal liability claim for a total of $250,000.00. (ECF Doc. 104)

*Post-trial Motion Practice*

48. On December 3, 2019, defendants renewed their motion for a directed verdict pursuant to FRCP 50(b)(3) with respect to both plaintiff's municipal liability claim under *Monell* and against defendant Sanders on the claim of excessive force, arguing that he is entitled to qualified immunity. (ECF Doc. 105).

49. Mr. Rubin and I spent significant time researching and writing opposition papers to rebut defendants' renewed motion for a directed verdict and filed same on January 9, 2020. (ECF Doc. 110).

50. On May 22, 2020, the Court denied defendants' motion and directed the Clerk of Court to enter judgment in favor of plaintiff in accordance with the jury's verdict.

51. The judgment was entered by the Clerk of Court on May 28, 2020.

**I.      Plaintiff's Fees Accrued in this Action are Reasonable**

52. As the partner in charge of this matter, I oversaw the work of Mr. Rubin and my respective firms' paralegals, as well as the work of other firm personnel to appropriately and capably investigate the claims and to litigate the case through discovery, trial, and this post-trial briefing.

53. In accordance with Z&R's practices of utilizing the least expensive level of personnel where appropriate and consistent with the highest professional standards, Z&R utilized our associate, Mr. Rubin, for a substantial amount of the work done in this case.

54. The core legal team consisted of Mr. Zucker, Mr. Rubin and myself, and a summary of the hours expended is provided for convenience here:

| Lawyer | Title | Hours | Rate |
|---|---|---|---|
| Guy S. Regev | Partner | 223.1 | $650.00 |
| Gary A. Zucker | Partner | 73.9 | $650.00 |
| Daniel B. Rubin | Associate | 287.2 | $375.00 |

**Total Attorney Hours: 548.2**        **Total Fees $300,750.00**

55. Because of the significant number of hours expended on this matter, Mr. Zucker, Mr. Rubin, and I were unable to take on other matters and/or to deal with other pressing litigation issues during the intense periods of litigating this case.

56. In my billing discretion, I removed from the invoice all time contributed to litigating this case by plaintiff's former counsel, who is separately submitting his own fee application.

57. I have reviewed our time records and the expense records and certify that these records reflect work reasonably and necessarily performed, and expenses reasonably and necessarily incurred in connection with the litigation of this matter.

## II. The Costs Accrued Are Reasonable as Well

58. Z&R has incurred $32,591.61 in costs. Attached as Exhibit 2 is a detailed listing of the costs accrued in this matter through June 11, 2020. The costs and expenses identified in Exhibit 2 are reflected in the accounting books and records Z&R maintains in the ordinary course of business. These books and records are prepared from bills from vendors, receipts and expense vouchers and check records. Copies of those individual records, showing full details of

charges and expenses incurred in this action, are too voluminous to attach to this declaration. We will make them available to Defendants or the Court immediately upon request. The out-of-pocket costs incurred by Z&R to prosecute this case were for customary litigation expenses like process servers, retrieval of medical records, expert review of medical records, expert testimony, and court reporters.

59. The following is a simplified chart of the actual costs for which Z&R seeks reimbursement, based on the detailed list of costs that may be found at the back of Exhibit 2:

| Category | Amount | Category | Amount |
|---|---|---|---|
| Supplies | $353.15 | Car fare | $267.08 |
| Process Server | $1,094.63 | Legal Research | $4,442.10 |
| Court Reporters | $8,684.67 | Fedex/Messenger | $126.18 |
| Medical Records | $23.80 | Expert Review of Records and Testimony | $17,600 |

Total: $32,591.61

### III. Z&R'S HOURLY RATES ARE REASONABLE

60. At that time of the action, Z&R was a three-lawyer firm located in downtown Brooklyn that primarily litigates personal injury and medical malpractice cases in the federal and state courts. I have extensive experience litigating over several hundred medical malpractice cases, and my partner, Gary Zucker, has outstanding credentials and more than 40 years of litigation experience. Our attorneys have all achieved a high degree of success in their cases and they enjoy excellent reputations in their field.

61. The detailed experience of the individual attorneys who worked on this case is set forth below.

## Guy S. Regev, M.D., J.D.

62. I am one of the few trial attorneys in the country who possess a medical degree and an extensive academic medical research background.

63. I obtained my undergraduate degree in Economics and premedical coursework from Duke University, graduating early in just 3 years. Thereafter I attended Indiana University School of Medicine, one of the top medical schools in the United States. While at Indiana University School of Medicine, I pursued a Master of Business Administration degree at the Kelley School of Business in Indiana University, a top 15 business school in the U.S. In addition, I spent time working at various hospitals including Sourasky Medical Center in Tel Aviv as a medical and surgical extern. I completed all the USMLE medical licensing examinations which include Step 1, Step 2, and Step 3.

64. For over a decade, I was actively involved in medical and scientific research at various premier laboratories around the United States, including the University of Miami School of Medicine, Bascom Palmer Eye Institute, and continuing with Indiana University School of Medicine Molecular Biology Department and Department of Ophthalmology. I also published articles on a variety of topics in high impact medical journals.

65. During my medical training, I became aware of the significant misfortunes of a myriad of individuals who were harmed due to negligence and had little to no access to justice due to the complexity of the issues surrounding their injuries and the absence of trained advocates who possessed the necessary medical background to help them.

66. I was among the first class of twelve students at Brooklyn Law School to obtain a juris doctorate degree in an accelerated two-year program. During this program, I also served as the Brooklyn Law School Health Law Fellow.

67. Immediately following my graduation from medical school, I began advising law firms on complex medical legal issues involving personal injury cases. I have advised some of the largest firms in New York on high profile negligence cases.

68. I have conducted and defended hundreds of defendants' and plaintiffs' depositions in highly complex negligence matters. I have also obtained high value recoveries in personal injury cases. Just last year, I procured a $1 million-dollar verdict in a case involving the negligent removal of a colon in Kings County Supreme Court (*George v. Duperval*, Index No.: 0018706/2013) and a $1.4 million-dollar settlement in a case involving the negligent failure to diagnose a pelvic infection resulting in severe injuries (*King v. NYCHHC*, Index No.: 501842/16). I also have experience in federal court. Last year, I obtained a $425,000 settlement in the Eastern District of New York (*Grimsley v. USA*, 17-CV-5811 (SJ)(JO)).

69. After joining the firm as a medical consultant in 2014, we formed the partnership, Zucker & Regev, P.C., which is dedicated to helping victims of general and medical negligence.

70. My unique background in both medicine and law allows me to have an enormous advantage over my adversaries because I can understand highly complex medical issues pertaining to personal injuries and communicate their complex concepts to jurors and the Court. The amount of education and training that I have earned in order to achieve this level of competence in medical/legal issues is first in its class and permits me to review, understand, and interpret medical reports, imaging films and cross examine medical witnesses at deposition and trials.

71. My training makes me uniquely qualified, not just to litigate medical malpractice cases, but also to properly investigate, evaluate, litigate, understand, and explain injuries and financial repercussions related to general personal injury actions. I am prepared to communicate

with experts and understand the mechanism of an injury, for example, Mr. Fox suffered from a cystic lesion of a bone in his foot as well as a complex pain syndrome, which are diagnoses that many attorneys would have difficulty not only understanding but also conveying to jurors. In addition, my medical background has trained me to effectively communicate and question witnesses in all phases of litigation.

72. I am able to research, comprehend, and communicate the prognosis of an injury; review and evaluate medical records to find and interpret relevant information; read and communicate imaging films and reports to explain to jurors; cross-examine medical witnesses during depositions and trials regarding medical issues pertaining to causation; review, understand, and interpret medical examination reports written by physicians and examining doctors; communicate complex concepts related to injuries to jurors and the Court; and question witnesses to elicit responsive questions.

73. Based on the prevailing rates for attorneys practicing with similar experience, Z&R seeks a rate of $650 per hour for my work.

74. This rate is consistent with the rates awarded to other litigators of comparable experience in Brooklyn, where Z&R is located.

### Gary A. Zucker

75. Gary Zucker is the founding partner of Zucker & Regev, P.C. and a seasoned litigator with over four decades of experience. Mr. Zucker graduated from Syracuse University with a Bachelor of Arts and then Brooklyn Law School.

76. After Brooklyn Law School, Mr. Zucker worked as an Assistant District Attorney in Kings County, New York, and has tried dozens of criminal, personal injury and medical malpractice cases.

77. Mr. Zucker is admitted to the Bar in New York and in the Southern and Eastern Districts of New York as well as the Second and Third Circuit Court of Appeals.

78. Mr. Zucker has been awarded an AV pre-eminent rating by Martindale-Hubbell, representing the highest rating for professional excellence based upon voting by his peers.

79. In addition, Mr. Zucker has been selected to the 2015, 2016 and 2017 editions of New York Super Lawyers and the New York Law Journal Motor Vehicle Verdicts and Settlements Hall of Fame.

80. Last year, Mr. Zucker obtained a $425,000 settlement in the Eastern District of New York (*Boise v. Spectrum*, 14-CV-01163).

81. Mr. Zucker has over 35 years of experience in personal injury.

82. Mr. Zucker has litigated in both the Eastern and Southern Districts of New York, the Eastern District of Pennsylvania as well as the United States Court of Appeals for the Second Circuit involving cases ranging from civil rights to products liability to medical malpractice to breach of contract.

83. Just in the past 5 years, the partners at Zucker & Regev have litigated a variety of cases in federal court, including *Hernandez v. U.S.* in 2014 and *Zaidan* v. *U.S.* in 2016, among other matters.

84. Based on the prevailing rates for attorneys practicing with similar experience, Z&R seeks a rate of $650 per hour for his work.

85. This rate is consistent with the rates awarded to other litigators of comparable experience in Brooklyn, where Z&R is located.

**Daniel B. Rubin**

86. Mr. Rubin graduated from Binghamton University and Pace University School of Law *cum laude*, where he was a Senior Associate of the Pace International Law Review.

87. Prior to joining our firm, Mr. Rubin worked as a law clerk for the Honorable Sam Watkins, Jr., Village Justice of Croton-on-Hudson, and as an intern for the Honorable Mary Anne Scattaretico-Naber, Judge of the Yonkers Family Court and for the New York State Office of the Attorney General, Westchester Regional Office.

88. Since joining the firm of Zucker and Regev, P.C. over two years ago, Mr. Rubin has been charged with representing clients who suffered from medical malpractice and catastrophic personal injury cases.

89. During his time at Z&R, Mr. Rubin has represented clients in all aspects of their cases, handling a caseload of up to 100 or more clients at a time. Mr. Rubin second chaired four high profile medical malpractice cases, conducted and defended more than 50 depositions appeared at numerous hearings, filed numerous successful motions on behalf of his clients, and made all necessary court appearances for his clients.

90. During the majority of his time at Z&R, Mr. Rubin was the sole associate and the primary litigation associate. Mr. Rubin conducted dozens of depositions each year, assisted in preparing nearly all litigation papers and motions, and second chaired part of this federal trial. Since joining Z&R in January 2018, Mr. Rubin has continued to work on an intensive and challenging caseload of medical malpractice and personal injury cases, including civil rights. His work at Z&R has ranged from client intake, to depositions, to drafting motion responses and Appellate Briefs. Mr. Rubin has ample knowledge, skill, and expertise in the areas of medical malpractice and civil rights law.

91. Based on the prevailing rates for attorneys practicing with similar experience, Z&R seeks a rate of $375 per hour for his work.

92. This rate is consistent with the rates awarded to other litigators of comparable experience in Brooklyn, where Z&R is located.

## **CONCLUSION**

93. In sum, Z&R requests a total fee award of $300,750.00 and $32,591.61 in costs, plus reasonable attorneys' fees incurred in continuing to litigate this application. (See Exhibits 1 and 2).

94. I swear under the penalty of perjury that the foregoing is true and correct.

Dated: Brooklyn, New York
      June 11, 2020

                                          ____/s/ Guy S Regev ( 6773)_____
                                              GUY S. REGEV